

## LAW OFFICES OF
## WILLIAM CAFARO

**William Cafaro, Esq.**
ADMITTED IN NY, CA, MD & TX
Email: bcafaro@cafaroesq.com

**Amit Kumar, Esq.**
*Managing Attorney*
ADMITTED IN NY & NJ
Email: akumar@cafaroesq.com

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
*www.cafaroesq.com*

*Louis M. Leon, Esq.*
*Associate*
ADMITTED IN NY
Email: lleon@cafaroesq.com

*Andrew S. Buzin, Esq.*
*Of Counsel*
ADMITTED IN NY, FL & DC

October 22, 2019

***Via ECF***
Hon. Vernon S. Broderick, U.S.D.J.
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, NY 10007

Re: Peguero v. Flair Redemption Management Corp., et al
Case No.: 19-cv-01068 (VSB)

Your Honor:

We represent the Plaintiff Felix Peguero in the above-referenced case brought pursuant to, *inter alia*, the Fair Labor Standards Act ("FLSA"), against Defendants Flair Redemption Management Corp. ("Flair" or the "Company") and Ramon Germosen ("Germosen" and collectively with the Company as "Defendants") (Defendants, with Plaintiff, as the "Parties"). We submit this letter, on behalf of all Parties, consistent with *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the Parties' settlement agreement[1], a copy of which is attached hereto as **Exhibit A,** and so order the stipulation of dismissal with prejudice, pursuant to Federal Rule of Civil Procedure Rule 41(1)(a)(ii), annexed to the Settlement Agreement. As explained further below, the Parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

---

[1] The Parties have executed a separate settlement agreement to resolve Plaintiff's New York Labor Law (NYLL) claims asserted in the Complaint. Courts in this Circuit have found bifurcated settlement arrangements, whereby parties submit their FLSA settlement agreement for court approval and settle non-FLSA claims, including NYLL claims, by private agreement, acceptable. *See, e.g., Abrar v. 7-Eleven*, 14-cv-6315 (AKT), 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016); *Rodriguez v. Gemco Realty II, LLC*, 16-cv-5385 (AJN), 2017 U.S. Dist. LEXIS 193664 (S.D.N.Y. Nov. 21, 2017); *Santos v. Yellowstone Prop., Inc*., 15-cv-3986 (PAE), 2016 WL 2757427 (S.D.N.Y. May 10, 2016). The unsubmitted agreement does not relate to Plaintiff's FLSA claims and does not preclude him from discussing his experiences litigating his FLSA claims.

### I.    Preliminary Statement

The Plaintiff filed his complaint on February 4, 2019, seeking, *inter alia*, damages for minimum wage and unpaid overtime wages under the FLSA.  Plaintiff alleges the following: The Defendants operated a recycling company in which Plaintiff worked loading and unloading recyclable materials/items for processing.  From on or about June 1, 2015 through on or about January 3, 2018, Plaintiff worked for Defendants.

From the beginning of his employment through December 31, 2016, Defendants required Plaintiff to work – and he did in fact work – Monday through Thursdays, inclusive, from 8:00AM until 7:00PM; Fridays and Saturdays, inclusive, from 8:00AM until 8:00PM and Sundays from 10:00AM until 4:00PM, for a total of 74 hours per week.  From on or about January 1, 2017 through January 3, 2018, Defendants required Plaintiff to work – and he did in fact work – Monday through Thursdays, inclusive, from 8:30 AM until 7:00PM; Fridays and Saturdays, inclusive, from 8:30AM until 8:00PM and Sundays from 10:00AM until 4:00PM, for a total of 71 hours per week. From the beginning of his employment through on or about December 31, 2016, Defendants paid Plaintiff $8.75 per hour for all hours of work, including those he worked over forty per week. From on or about January 1, 2017 through on or about January 3, 2018, Defendants paid Plaintiff $11.00 per hour for all hours of work, including those he worked over forty per week.

Despite regularly working more than forty hours per week, he did not receive overtime compensation at one- and one-half times his regularly hourly rate for all hours he worked over forty.  He was also not paid the statutorily required minimum wage rate at all times in his employment.

Defendants deny Plaintiff's allegations.  Defendants state that at all times relevant to this lawsuit they paid Plaintiffs correctly under the law.  They further claim that Plaintiff's alleged work hours are greatly exaggerated.  Lastly, Defendants allege that Plaintiff worked part or most of his weekly hours for another corporate defendant that was not named in this case and which is separate and distinct from Defendants herein, thereby limiting or completely obviating any liability.

### II.    The Settlement Reached Between the Parties

This FLSA matter has been settled between the parties in the sum of $60,000.  While Plaintiff has alleged that he has suffered significant damages, Defendants deny any liability.  The negotiated recovery represents over 100% of the full FLSA claims alleged by Plaintiff, inclusive of full liquidated damages.

While Plaintiffs have alleged that they have suffered significant damages, Defendants deny any liability.  Based on Plaintiff's damage calculations for his FLSA claims, his total damages are $53,237.11, inclusive of liquidated damages (at 100%,) which are never guaranteed.  Viewed in this light, the parties believe that the negotiated recovery of $60,00.00, which is just more than a 100% return on Plaintiffs' aggregate FLSA claims, is a fantastic result.  Indeed, it represents a reasonable compromise of the disputed issues and any actual or potential claims in the totality of the circumstances.  In addition, the Parties believe that the certainty of settlement is better than the

uncertain outcome of protracted litigation, and Plaintiffs prefer to receive their money than to continue continuing litigation.

With respect to the release language in the Agreement, it is limited solely to wage and hour and related claims. *See*, *Lazaro-Garcia v. Sengupta Food Servs.*, 2015 U.S. Dist. LEXIS 167991 (S.D.N.Y. Dec. 15, 2015. Additionally, the Agreement contains no confidentiality provision. *See Ocasio v. Big Apple Sanitation, Inc.*, 2016 U.S. Dist. LEXIS 16527 (E.D.N.Y. Feb. 9, 2016).

Plaintiff believes that the $60,000 settlement is preferable to further litigation and will avoid subjecting both Parties to the time and expense of conducting depositions and trial. While I was confident that I would be able to prevail at a higher figure, there are always perils in doing so, and the delay in Plaintiff's realization of payment, even if successful, would certainly be greater than under the proposed settlement. After all, the case is my client's cause of action, and his preference of acceptance or rejection of any offer of settlement should govern anyone else's. Each party is represented by experienced counsel. Plaintiff's counsel's practice focuses on employment law and is an attorney who handles a significant volume of FLSA cases.

### III.    The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, *supra* at 335.

_Plaintiff's Range of Possible Recovery_

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome.  *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012).  In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012).  Here, while Plaintiff alleges entitlement to damages, Defendants aver that he was properly paid at all times and therefore is not entitled to any damages.

In light of the totality of the circumstances, the settlement represents a reasonable compromise of the *bona fide* dispute in this matter.  The settlement eliminates risks and ensures that the Plaintiff will receive a meaningful amount of wages due even after paying the legal fee.

_Whether the Settlement Agreement is the Product of Arm's-Length Bargaining_

A "presumption of fairness, adequacy and reasonableness may attach to a…settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted).  The Parties engaged in discovery and participated in arm's length settlement discussions in order to arrive at this settlement. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

_Possibility of Fraud or Collusion_

There is no possibility that this settlement was precipitated by reason of "overreaching" by the employer.  To the contrary, the settlement was the result of vigorous arm's-length negotiations. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation.  Moreover, because the Plaintiff left the Defendants' employ prior to the commencement of the action, there has not been, nor could there have been, any undue influence exercised upon Plaintiff in the workplace which could have precipitated this settlement.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007).  Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case.  At all times, negotiations took place between experienced counsel and were at arm's-length. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

### IV.  Plaintiffs' Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount

Although the undersigned fully recognizes the Court's prerogative to evaluate the attorneys' fee arrangement in a FLSA matter, not all courts in this circuit have read *Cheeks* to require this assessment.  *See Gutierrez v. 352 East 86th St. Rest. Inc.*, 2016 U.S. Dist. LEXIS 23967, *3 -4 n. 1 (S.D.N.Y Feb. 19, 2016) ("I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counselor to alter the freedom of contract between a client and his attorney").  Additionally, to the extent *Cheeks* did mention attorney's fees, it was in the context of an abusive attorney's fee that went as high as 43.6%, in contrast to the standard one third which is requested here.  *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d at 206.  Nonetheless, in support of this fee request, the undersigned submits as follows:

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering withheld minimum wage and overtime compensation on behalf of the Plaintiff in this action. Under the retainer agreement, Plaintiff's counsel is entitled to a one third fee on the gross recovery.  This amounts to Twenty Thousand Dollars and Zero Cents ($20,000.00).

As the Court will see, the undersigned expended 23.3 hours. *See* billing records attached as **Exhibit B**.  We are requesting a billing rate of $225.00 for myself. *See Cajamarca v. Yerina Rest. Corp.*, 2016 U.S. Dist. LEXIS 102686 * (S.D.N.Y. Aug. 4, 2016); *See Colon v.45-53 West 110 Street Housing Development Fund Corporation*, No 15-cv-03382 (AJP) (S.D.N.Y. November 2, 2016).  "To determine the quality of representation, courts review, among other things, the recovery obtained, and the backgrounds of the lawyers involved in the lawsuit."  *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (*citing In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

I have been employed as an associate with my office since July 2017.  I received the degree of Juris Doctor from Maurice A Deane School of Law at Hofstra University in 2014 and is admitted to practice in the state courts of New York as well as the Southern and Eastern Districts of New York.  I am fluent in both English and Spanish.  Prior to working at the Law Offices of William Cafaro, I was an associate at Frank & Associates, P.C. and later at Borrelli & Associates, P.L.L.C. where I worked almost exclusively on collective and class action wage and hour litigation.

At the requested rates, Plaintiff's counsel's total lodestar is $5,242.50.  Where, like here, the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved.  *See In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2015 U.S. Dist. LEXIS 98691 (S.D.N.Y. July 7, 2015).  Moreover, a multiplier is used in order to compensate Plaintiffs' counsel for time that is required administering the settlement.  *See Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *19 (E.D.N.Y. Feb. 18, 2011).  Courts have awarded multipliers up to **eight (8)** times the lodestar and in some cases they have awarded multipliers that are even higher.  *See*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (collecting cases); *see also*, *Riveras, et al v. Bilboa Rest. Corp., et al.*, E.D.N.Y. Case. No. 17-cv-04430, DE 74 (Memorandum and Order approving a lodestar multiplier of 6.7).  Here, the multiplier requested is approximately 3.8, which is well within the range granted by courts in this circuit.

While the multiplier represents a greater recovery than Plaintiffs' counsel's lodestar, this should not result in penalizing counsel for achieving an early settlement. *See Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *22-23 (S.D.N.Y. Sep. 23, 2014) (citing *Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.")); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "counsel should [not] necessarily receive a lesser fee for settling a case quickly").

Lastly, the Court should review the public policy considerations concerning the manner in which attorneys' fees are reviewed.  Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing would have been to build up attorneys' fees.  This would forestall a resolution that could have been achieved earlier.  While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is made, other attorneys who do wage-and-hour litigation very well might.  Reducing attorney's fees in single plaintiff FLSA cases below one third would disincentivize early resolution of these cases.  As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy.

## V.    Conclusion

For the reasons set forth above the Plaintiff requests that the Court approve the settlement as reflected in the Agreement, and that the Court "So Order" the Dismissal with Prejudice appended to **Ex. "A".**  Plaintiff's counsel further requests that the Court approve the attorney's fee award reflected in the Agreement as fair and reasonable.

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO

___/s/ Louis M. Leon_____
By Louis M. Leon (LL 2057)
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018
(212) 583-7400
LLeon@CafaroEsq.com

To:    All Counsel *via* ECF